IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| PATRICK ANDREW WIELAND,<br><br>    Plaintiff,<br><br>  vs.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>    Defendants. | Case No. 24-cv-00215-DKW-RT<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Patrick Andrew Wieland asserts various federal civil rights and state-law claims against the City and County of Honolulu ("the City") and Honolulu Police Department ("HPD") Detective Damien Desa, arising out of Wieland's October 2022 arrest and detention pursuant to a State of Florida extradition warrant. Dkt. No. 1. On June 6, 2025, the City and Desa filed separate motions for summary judgment. Dkt. Nos. 51 & 52.

Having reviewed the parties' briefing, evidentiary submissions, and the record generally, the Court finds that summary judgment is warranted for both the City and Desa. Specifically, Wieland has failed to demonstrate a genuine dispute of material fact as to his federal claims, and the Court declines to exercise supplemental jurisdiction over his remaining state-law claims. As a result, Defendants' motions

for summary judgment, Dkt. Nos. 51 & 52, are GRANTED, as more fully explained below.

## FACTUAL & PROCEDURAL BACKGROUND[1]

On October 11, 2022, HPD officers performed a traffic stop on Wieland on the Island of Oahu due to the expiration of his vehicle's safety check and registration. Depo. of Patrick Wieland at 54:9–56:17, Dkt. No. 63-13.  During the stop, police discovered there was an extradition warrant for Wieland's arrest issued by the Circuit Court of the Ninth Judicial Circuit in Orange County, Florida on a charge of criminal mischief.[2]  DCSF ¶ 6; Desa Decl. ¶ 6, Dkt. No. 59-1; Wieland Depo. at 59:3–7; Dkt. No. 59-3 at 3–4.  Pursuant to this warrant, the HPD officers arrested Wieland and placed him in the custody of the HPD Central Receiving Division.

---

[1]Defendants have filed an amended concise statement of facts ("DCSF"), Dkt. No. 59, to which Wieland responded ("PCSF").  Pursuant to Local Rule 56.1(e), Wieland's submission both responded to Defendants' allegations, *see* Dkt. No. 63 at 2–3, and asserted additional facts he believes are relevant, *see id*. at 3–4.  When this occurs, Local Rule 56.1(e) provides that, in filing their reply, Defendants shall respond to each of the additional facts, which they have.  *See generally* Dkt. No. 68.  However, Local Rule 56.1(c) requires that both parties' statements of fact provide "citation[s] to a particular affidavit, deposition, or other document that supports the party's interpretation of the material fact" and "particularly identify the page and portion of the page of the document referenced."  Here, at various points, both sides fail to comply with this rule.  For instance, in responding to the DCSF, Wieland repeatedly cites to documents without providing the page or paragraph.  *See, e.g.*, Dkt. No. 63 at 2 ¶ 4.  Defendants, meanwhile, fail to even cite to documents in the record in their reply statement of facts.  *See, e.g.*, Dkt. No. 68 ¶¶ 13-14.  "A general denial" without reference to any specific portion of a document supporting a party's interpretation of the facts "is not sufficient" for the purposes of Local Rule 56.1(c).  *Coles v. Eagle*, 2014 WL 5089177, at *3 (D. Haw. Oct. 8, 2014).  Accordingly, the Court relies on the parties' concise statements of facts only to the extent that they comply with the Local Rules.  *See* L.R. 56.1(g).

[2]The parties do not dispute the validity of the warrant.  *See* DCSF ¶ 6; PCSF ¶ 6.

DCSF ¶ 6.

Desa, then an HPD Lieutenant, was HPD's extradition officer for Wieland's case, and thus responsible for confirming the Florida warrant, verifying extradition status, arranging an extradition hearing, and preparing the necessary extradition documentation for the state court. Desa Decl. ¶¶ 7–9. In fact, on the same day as Wieland's arrest, Desa confirmed the warrant's validity and Wieland's identity using photographs, FBI-provided fingerprints, and Wieland's social security number. *Id.* ¶ 22. In an email exchange with Desa on October 11, 2022, the Orange County Sheriff's Office requested that Wieland be held as a "Fugitive from Justice with a NO BOND status." *Id.* ¶ 12; Dkt. No. 59-3 at 1. Also on October 11, Desa requested an extradition hearing from the state court; the court set Wieland's hearing for October 19, 2022. DCSF ¶¶ 10–13.

In his deposition, Wieland testified that he had been unaware of any Florida warrant for his arrest and, despite asking Honolulu officers multiple times, was not "initially" informed of the charges contained in the warrant. He only later learned from HPD the nature of the charges at an unspecified time during his confinement.[3]

---

[3] Wieland is vague as to the exact time at which he learned the charges in the arrest warrant. Wieland testified that in response to multiple questions to HPD officers, he was told the warrant was for "a criminal mischief charge in Florida," and that this moment may have occurred "at any point between getting arrested and ending up in a jail cell." Wieland Depo. 60:11–18. He further testified that he "got to the police station . . . and then they told me that I had the warrant for my arrest in Florida." *Id.* 60:22–24. When asked if he was told that the charge was criminal mischief "at the time that [he] was first arrested," Wieland answered that "It's hard to know 100 percent

Wieland Depo. at 60:3–16.   HPD officers also allowed Wieland access to a telephone, which he used to call several persons, including an attorney.  *Id*. at 71:18–22.  Wieland claims that, during his roughly 8-day confinement, he was subject to verbal harassment from HPD officers and was denied access to a shower, blankets, or a change of clothes.  *Id*. at 79:2–25; 80:1–25.   It is undisputed by the parties, however, that *Desa* "did not have any knowledge of the conditions of Plaintiff's confinement while he was detained," DCSF ¶ 17, aside from Desa's knowledge of the duration of Wieland's confinement, PCSF ¶ 17.

On October 19, 2022, Wieland made his initial state court appearance, as scheduled, after which he posted bail and was permitted to voluntarily return to Florida for criminal proceedings.  DCSF ¶ 16; Wieland Depo. at 89:12–90:9.  In total, Wieland had been in custody in Honolulu for approximately eight days.

On May 10, 2024, Wieland filed a Complaint against the City and County of Honolulu, Desa, HPD Chief Arthur Logan, and Doe HPD Officers 1-15.  Compl. at ¶¶ 10–13, Dkt. No. 1.  Wieland alleges the following counts:

> **Count 1:** Deprivation of liberty without due process of law and extended detention in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;
>
> **Count 2:** Deprivation of the right to be informed of the nature and cause of an accusation in violation of the Sixth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983;

---

what was said during that."  *Id*. at 61:2–6.  Regardless, Wieland's testimony seems to indicate that he learned of the criminal mischief charge early in his detention.

**Count 3:** Deprivation of the right to be admitted to bail in violation of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983;

**Count 4:** Deprivation of the right to interstate travel and equal protection in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;

**Count 5:** Failure to intervene in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983;[4]

**Count 6:** Failure to train, supervise, and/or discipline in constitutionally adequate extradition techniques for arrestees and pre-trial detainees pursuant to a foreign arrest warrant, in violation of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978);

**Count 7:** State-law negligence;

**Count 8:** State-law intentional infliction of emotional distress; and

**Count 9:** State-law negligent training and supervision.

---

[4]In his Complaint, Wieland states that Counts 1–5 are brought against "all Defendants." Compl. ¶ 43–88. However, the conduct alleged therein refers only to the actions of the individual Defendants (Desa and, at the time the Complaint was filed, Logan)—the City is mentioned only in the context of its failure to train officers or enforce policy protecting constitutional rights. *See, e.g., id.* ¶¶ 48, 84. In his opposition, Wieland confusingly states that his "five claims brought pursuant to § 1983 [*i.e.* Counts 1–5] plead municipal liability against [the City]." Dkt. No. 61 at 8. The City's motion for summary judgment does not address Counts 1–5 except in the context of whether a constitutional violation occurred for the purposes of *Monell*, and instead assumes that these Counts are pursued against Desa only. *See* Dkt. No. 52. Because Wieland does not dispute or challenge this characterization, *see* Dkt. No. 61, the Court assumes the same and addresses Counts 1–5 only with respect to Desa or as Wieland's allegations pertain to a *Monell* claim. If Wieland intended to pursue Counts 1–5 against the City, the Court would dismiss those claims anyway because "a claim under *Monell* is the only means of asserting a § 1983 claim against a municipality." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 941 (S.D. Cal. 2022).

*See* Compl. at ¶¶ 43–115.[5]  On August 6, 2024, the parties stipulated to the dismissal of Defendant HPD Chief Logan, which the Court approved.  Dkt. Nos. 25, 26.

On June 6, 2025, Desa and the City each filed a motion for summary judgment.  Dkt. Nos. 51 & 52.  On July 18, 2025, Wieland opposed each motion.  Dkt. Nos. 61 & 62.  Defendants each replied on July 25, 2025.  Dkt. Nos. 66 & 67.  On August 8, 2025, the Court held a motions hearing.  Dkt. No. 70.[6]  On September 3, 2025, the Court issued an Entering Order granting Defendants' motions for summary judgment.  Dkt. No. 77.  This Order now follows to further explain that ruling.

## STANDARD OF REVIEW

### I.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need

---

[5]Wieland brings his claims against Desa in both his individual and official capacities.  Compl. at ¶ 11.  However, Defendants purport that the parties "orally agreed to dismiss the claims against Detective Desa in his official capacity."  Dkt. No. 52 at 1 n.1.  Wieland does not dispute this, *see generally* Dkt. No. 62, and, on that basis, the Court assumes that Wieland sues Desa only in his individual capacity.

[6]At the motions hearing, the Court, *inter alia*, heard oral argument and ruled on various motions to seal relating to the pending motions for summary judgment.  *See* Dkt. Nos. 54, 64; and Dkt. No. 1 in Case No. MC25-257, *In Re: Public First Law Center*.  Those rulings are captured at Dkt. No. 70, based on the reasons stated on the record at the hearing, and will not be repeated here.

only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corps. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## II.     Qualified Immunity

The doctrine of qualified immunity is an affirmative defense, shielding government officials from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 815–18 (1982). To overcome qualified immunity, the plaintiff must therefore "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation marks and citation omitted). In other words, "qualified

immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 12 (quotation marks and citation omitted).

## DISCUSSION

In moving for summary judgment, Desa argues that he is entitled to qualified immunity with respects to Counts 1–5.  Dkt. No. 51.  Meanwhile, the City argues that Wieland has failed to show a dispute of material fact with respect to his *Monell* claim.  Dkt. No. 52.  The Court addresses each contention below.

## I.    Count 1: Deprivation of Liberty/Extended Detention

In Count 1, Wieland asserts that his eight-day detention prior to his first state court appearance occurred "without any determination of probable cause that Plaintiff was the person named in the Florida warrant," and thus "deprived Plaintiff of his liberty rights."  Compl. ¶ 45.

The Due Process Clause provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. IV, § 1.  To show a violation of procedural due process, a plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."  *Guatay Christian Fellowship v. Cnty. of S.D.*, 670 F.3d 957, 983 (9th Cir. 2011).  Because Defendants assert qualified immunity, the Court begins by determining if any constitutional violation took place.  *Ashcroft*, 563 U.S. at 735.

The parties here do not dispute that Wieland possessed a liberty interest in his release or that his pretrial detention implicated that interest. *See* Dkt. No. 51 at 9. The parties also do not dispute, however, that Defendants acted upon a valid Florida warrant in arresting and detaining Wieland. *See* DCSF ¶ 6; PCSF ¶ 6. This poses a crucial problem for Plaintiff's claim. Courts have routinely "declined to hold custodial agencies liable" for due process violations "for detaining an individual pursuant to a valid court order." *Rivera v. Cnty. of Los Angeles*, 2011 WL 2650006, at *12 (C.D. Cal. July 5, 2011), *aff'd*, 745 F.3d 384 (9th Cir. 2014) (collecting cases); *see also Bretz v. Kelman*, 773 F.2d 1026, 1030–31 (9th Cir. 1985) (holding that even "[a]n incorrect arrest does not provide grounds for a claim of deprivation of liberty without due process if the arrest was made pursuant to a valid warrant based upon probable cause"). The rationale for the rule "is grounded in the common sense principle" that officers holding a person in custody should not be compelled to disobey a valid court order. *Rivera*, 2011 WL 2650006, at *12; *see also Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987) ("The rationale for immunizing persons who execute court orders is apparent. Such persons are themselves integral parts of the judicial process." (internal quotation marks omitted)); *Gant v. County of Los Angeles*, No. 08-CV-5756 (GAF), 2010 WL 679082, at *3 (C.D. Cal., Feb. 25, 2010) ("To require a jailer to choose between

disobeying the court order or being haled into court to answer for damages would be simply unfair." (internal quotation marks omitted)).

Rather than dispute the validity of the warrant itself, Wieland argues that Desa's execution of that warrant constituted a violation of due process because Wieland was subjected to pretrial detention without "a prompt judicial determination of probable cause" within 48 hours of his arrest. Dkt. No. 62 at 5–6. He does so by referencing his understanding that "an arrestee is entitled under the Fourth Amendment to a hearing at which he is presented with the probable cause of his arrest within forty-eight hours of the arrest." *Benson v. Chappell*, 958 F.3d 801, 823 (9th Cir. 2020). But that rule is inapposite here because it applies to "persons arrested *without a warrant*." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991); *see also Powell v. Nevada*, 511 U.S. 79, 80 (1994) (holding that the Fourth Amendment "requires a prompt judicial determination of probable cause following an arrest made *without a warrant* and ensuing detention" (emphasis added)). Here, there *was* a warrant issued for Wieland's arrest, upon which the HPD and Desa acted. Dkt. No. 59-3. Wieland was not constitutionally entitled to a hearing to determine probable cause because probable cause had *already* been determined by a different court. *See Baker v. McCollan*, 443 U.S. 137, 143 (1979) ("[A] person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not

constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial.").

Wieland argues that it was nevertheless "logically impossible for the Florida warrant to fully satisfy the requirement of a judicial probable cause determination" because "an essential element of the determination is that the person in custody is the same person accused of having committed the alleged offense." Dkt. No. 62 at 7. To the extent that Wieland claims that a *second* probable cause hearing was required to confirm his identity, he cites no authority to that effect. At any rate, Wieland never claimed mistaken identity during his detention, nor does he even today. And importantly, on the very day of Wieland's arrest, Desa confirmed that Wieland was the subject of the Florida warrant via fingerprints, a photograph, and Wieland's Social Security Number. Desa Decl. ¶ 22.[7] Desa could hardly have done more.

---

[7]Wieland also argues that Desa violated two sections of the Hawai'i Uniform Criminal Extradition Act by not arranging a probable cause hearing before a Hawai'i state court. Compl. §§ 23, 41; Dkt. No. 62 at 7–8. Even if the Court assumed this was true, Section 1983 generally offers no redress for violations of state law. *See Campbell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998) ("As a general rule, a violation of state law does not lead to liability under § 1983."). In any event, the sections to which Wieland cites appear inapplicable: H.R.S. § 832-13 concerns the issuance of warrants for a fugitive from justice, while H.R.S. § 832-14 requires that a person arrested "without a warrant" be brought before a court "with all practicable speed."

Desa is entitled to summary judgment as to Count 1 because Wieland has failed to demonstrate any violation of a constitutional right.  The Court, therefore, need not reach the second step in the qualified immunity analysis.[8]

## II.    <u>Count 2: Sixth Amendment Claim</u>

In Count 2, Wieland claims that Desa violated the Sixth Amendment by "fail[ing] to inform Plaintiff of the nature of the charges against him" during his period of detention. Compl. ¶ 55. "The Sixth Amendment . . . guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him." *Calderon v. Prunty,* 59 F.3d 1005, 1009 (9th Cir. 1995).  However, "Sixth Amendment rights attach only to charged offenses, and not until formal criminal proceedings are initiated (i.e., formal charge, preliminary hearing, indictment, information or arraignment)." *Mefford-Wheat v. Jasper*, 2012 WL 1931247, at *3 (E.D. Wash. May 29, 2012) (citing *Texas v. Cobb,* 532 U.S. 162, 167–68 (2001)); *see also Moran v. Burbine*, 475 U.S. 412, 429 (1986) (denying the "proposition that the Sixth Amendment right, in any of its manifestations, applies prior to the initiation of adversary judicial proceedings").

---

[8]Wieland also fails at the second step.  He offers no clearly established law indicating that an arrestee pursuant to an extradition warrant supported by probable cause must be brought before a judge in less than the eight days he now demands.  *See generally* Dkt. No. 62.  Moreover, as the record establishes, the state court set Wieland's hearing date after Desa inquired on the day of Wieland's arrest.  DCSF, ¶¶ 12-13.  Any delay, in other words, was not of Desa's making.

There is no dispute here that Wieland was arrested but not indicted or charged in October 2022.  Absent any charging documents, Wieland's Sixth Amendment notification rights were not implicated.  *See Richardson v. Runnels*, 2008 WL 5070118, at *6 (E.D. Cal. Nov. 26, 2008), *report & recommendation adopted*, No. 2009 WL 78367 (E.D. Cal. Jan. 13, 2009) ("In order to determine whether a defendant has received constitutionally adequate notice, the court looks first to the charging document.").  Even if this were not the case, Wieland's testimony indicates that he was informed of the Florida criminal mischief charge against him, the conduct underlying the extradition warrant, at an early point in his detention, perhaps before entering his Honolulu cell.  Wieland Depo. 60:11–24.  It is therefore not clear from the undisputed facts that Wieland went uninformed for long as to the nature of the charges in the Florida warrant.  Accordingly, Wieland has not shown a constitutional violation with respect to his Sixth Amendment claim.  The Court therefore agrees with Desa that qualified immunity applies and grants summary judgment as to Count 2.

III.    **Count 3: Deprivation of Right to be Admitted to Bail**

In Count 3, Wieland asserts that Desa violated his Eighth Amendment rights when he "caused Plaintiff to be held for 9 days without being admitted to bail for the Florida allegation."  Compl. ¶ 64.

The Eighth Amendment forbids "[e]xcessive bail." U.S. Cont. amend. VIII. This protection, however, does not guarantee a right to bail. *See United States v. Salerno*, 481 U.S. 739, 752 (1987) ("The Eighth Amendment addresses pretrial release by providing merely that 'excessive bail shall not be required.' This Clause, of course, says nothing about whether bail shall be available at all."); *Carlson v. Langdon*, 342 U.S. 524, 545–46 (1952) (holding that the Eighth Amendment does not provide an absolute "right to bail.").

Desa moves for summary judgment on the ground that the Eighth Amendment does not require bail hearings to be held "within a set period of time" or at all during the extradition process. Dkt. No. 51 at 12. Wieland does not respond to Desa's argument—his opposition merely repeats that he was held for nine days[9] with his "bail status unscrutinized by a judicial authority." Dkt. No. 61 at 7. Regardless, the Court agrees that the failure to arrange a bail hearing within Wieland's eight-day confinement does not constitute a constitutional violation for the purposes of Section 1983. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007) ("[T]he Excessive Bail Clause does not bar the state from detaining even noncapital arrestees without bail[.]"); *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012) ("The Eighth Amendment's protections address the amount

---

[9]Wieland was arrested on October 11 and released on October 19, 2022. He repeatedly asserts that this represents a "nine-day detention." Whether his detention was eight or nine days is immaterial to any of the Court's conclusions.

of bail, not the timing.  There is no constitutional right to speedy bail."); *Farrow v. Lipetzky*, No. 12-CV-06495 (JCS), 2013 WL 1915700, at \*22 (N.D. Cal. May 8, 2013) (dismissing Section 1983 claim predicated on a purported "right to a prompt bail hearing" because a delayed bail hearing does not violate the Eighth Amendment).

Desa is entitled to summary judgment as to Count 3.

## IV.  <u>Count 4: Deprivation of Right to Interstate Travel and Equal Protection</u>

In Count 4, Wieland alleges that Desa "discriminated against Plaintiff by administering his arrest and detention differently based on his status as an out-of-state offender," in violation of "his right to interstate travel" and his "right to equal protection" as "a nonresident of Hawaii."  Compl. ¶¶ 71, 73.

Desa argues in his motion for summary judgment that (1) an arrest supported by probable cause does not violate an arrestee's right to travel; and (2) Wieland has presented no evidence of discriminatory intent behind Desa's actions.  Dkt. No. 51 at 13–15.  Wieland does not respond to these arguments—his opposition to Desa's motion for summary judgment does not mention Count 4 at all.  *See generally* Dkt. No. 62.

Wieland's failure to meaningfully respond to Desa's arguments regarding Count 4—despite having adequate opportunity to do so—constitutes abandonment of that claim.  *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir.

2009) (affirming summary judgment where plaintiff "abandoned his [] claims" by failing to respond in opposition); *Kim v. Coach, Inc.*, 2016 WL 544469, at *3 (D. Haw. Feb. 9, 2016), *aff'd*, 692 F. App'x 481 (9th Cir. 2017) ("A party abandons an issue when [he] has had a full and fair opportunity to express [his] views on that issue, but does not address it in [his] opposition to the opposing party's motion for summary judgment." (internal quotation marks omitted)); *Gonzalez v. Okagawa*, 2013 WL 2423219, at *13 (D. Haw. June 4, 2013) (holding that where a plaintiff "abandons his claims by failing to address them . . . in opposition to the defendant's motion for summary judgment, summary judgment against the plaintiff on those [] claims is appropriate"). Accordingly, the Court grants summary judgment as to Count 4.

## V.    **Count 5: Failure to Intervene**

In Count 5, Wieland alleges that Desa failed to intervene (1) when arrestees were held "well beyond a reasonable time" without a judicial hearing; and (2) to stop the mistreatment Wieland allegedly suffered from other officers while in HPD custody. Compl. ¶ 84. Desa argues that summary judgment is warranted because Wieland has not shown a constitutional violation or that Desa was even aware of, much less had the authority or opportunity to stop, Wieland's alleged mistreatment. Dkt. No. 51 at 16–18. Wieland has failed to meaningfully respond to these arguments: his only mention of Count 5 in his opposition briefs simply repeats his

allegation that there was a "fail[ure] to intervene to release Plaintiff from custody." Dkt. No. 61 at 7.

As noted above, Wieland's failure to substantively respond to Desa's arguments for summary judgment constitutes an abandonment of his claim. *See Ramirez*, 560 F.3d at 1026. Even if the Court credited Wieland's bare mention of Count 5 in his opposition, however, the Court would still grant summary judgment.

First, a failure-to-intervene claim under Section 1983 requires that a constitutional violation actually took place. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001) ("Neither a municipality nor a supervisor, however, can be held liable under § 1983 where no injury or constitutional violation has occurred."); *see also Pettersen v. Cnty. of Los Angeles*, No. 14-CV-4699 (DSF) (AGRx), 2015 WL 13333499, at *7 (C.D. Cal. Oct. 8, 2015) ("As a threshold matter, a failure-to-intervene claim requires a constitutional violation."). As addressed above (*see* Discussion, Sections I–IV, *supra*), the Court finds there was no constitutional violation pertaining to Wieland's eight-day confinement on a valid warrant pending an extradition hearing. Therefore, there was no constitutional wrong that Desa had a responsibility to stop.

Second, Wieland claims that Desa failed to intervene regarding his alleged mistreatment while in custody. It is true that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other

citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation and internal quotation marks omitted).  However, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* at 1289.  Similarly, "a supervisor is liable for the acts of his subordinates" only if "the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) (quotation marks, brackets, and citation omitted).  Here, even assuming that Wieland's alleged mistreatment constituted a constitutional violation and that Desa had supervisory authority over the unnamed officers in question, the parties are in agreement that Desa "did not have any knowledge of the conditions of Plaintiff's confinement."  DCSF ¶ 17.  This undisputed fact is fatal to this aspect of Wieland's failure-to-intervene claim.

Accordingly, the Court grants summary judgment as to Count 5.

## VI.   **Count 6: *Monell* Liability**

Wieland may establish municipal liability under Section 1983, as recognized in *Monell*, by showing at least one of the following:

> (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

- 18 -

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).  In other words, municipal liability

under Section 1983 may be premised on an officially promulgated policy, a custom

or persistent practice, deliberately indifferent training that is the proximate cause of

the violation of the plaintiff's federally protected rights, or a single decision by an

official with final decision-making authority.  *See City of Canton v. Harris*, 489 U.S.

378 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur v. Cincinnati*,

475 U.S. 469 (1986).

Here, Wieland asserts *Monell* claims on the basis of official policy, custom

and practice, and failure to train.[10]  *See generally* Compl. ¶¶ 89–97.  All of these

theories lack merit.

### a. Official Policy

A *Monell* claim premised on an allegedly unconstitutional official policy

requires the plaintiff to establish:

> (1) that he possessed a constitutional right of which he was deprived;
> (2) that the municipality had a policy; (3) that this policy amounts to
> deliberate indifference to the plaintiff's constitutional right; and (4) that
> the policy [was] the moving force behind the constitutional violation.

---

[10]In its motion for summary judgment, the City asserts that Wieland did not assert that any policy-making official ratified unconstitutional conduct for the purposes of *Monell*.  Dkt. No. 52 at 6–7. Wieland does not dispute this characterization nor address ratification in his opposition.  *See generally* Dkt. No. 61.  Accordingly, the Court deems that theory abandoned and grants summary judgment.  *See Ramirez*, 560 F.3d at 1026.

*Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004) (citations and quotation marks omitted).  Wieland fails to meet these requirements.

Wieland's Complaint is vague as to what official policy is at issue in his *Monell* claim, *see generally* Compl., but cites in his opposition to the HPD policy manual pertaining to arrests and releases.  Dkt. No. 61 at 9i–10.  Specifically, HPD Policy 7.01 states:

> After any arrest the following requirements must be observed . . .
>
> b. An arrestee must be charged and judicial hearings and determinations must take place. Any unnecessary delay in this process makes further detention unjustified, and the person must be released.
>
> c. In all cases, the above must be carried out (i.e., the arrestee must be released or there must be a hearing/determination by the appropriate authority) by the next available court date after bail is set.
>
> d. In the case of an extradition, a detainee can be held until they are individually able to be transported to or picked up by the receiving agency.

Dkt. No. 63-6 at 4 (pdf pagination).  Wieland also refers to another provision of HPD Policy 7.01 which provides that the officer in charge of the receiving desk must "review the circumstances of each arrest . . . to determine whether there exist sufficient grounds or facts to justify the arrest."  Dkt. No. 63-7 at 2 (pdf pagination).  Finally, Wieland points to the HPD's Criminal Investigative Division's Manual of Procedure ("MOP"), which directs detectives overseeing extradition matters to contact the court to arrange an extradition hearing and states that arrestees remain in

HPD custody until the extradition hearing can be held.  Dkt. No. 63-10.  Wieland claims that these collective provisions amount to "formal policies" that violated constitutional rights by "specifically exempt[ing] extradition arrestees from being brought before a judge within a reasonable time" with "a disregard for detainee due process."  Dkt. No. 61 at 9.

Wieland fails to raise a genuine issue of material fact that any of these policies was unconstitutional.  First, the Court notes that "*Monell* claims [] require a plaintiff to show an underlying constitutional violation."  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *see also Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding that "municipal defendants cannot be held liable because no constitutional violation occurred").  As noted above (*see* Discussion, Sections I–V, *supra*), the Court finds there was no constitutional violation with regard to Wieland's detention on the extradition warrant.

Even if this were not the case, Wieland's *Monell* claim still would not survive summary judgment.   Wieland was required to establish that the challenged policy was the "moving force" behind his alleged injury, meaning that the policy had "a direct causal link to the deprivation of the federal right."  *Dugan v. Cnty. of Los Angeles,* 2012 WL 1161638, at *4 (C.D. Cal. Apr. 9, 2012); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the

municipality directly caused a deprivation of federal rights."). Here, the policies to which Wieland cites do not mention anything about the length of detention in extradition proceedings, which is the injury at issue. Moreover, it is not clear that the policies were responsible for the eight-day time frame before Wieland reached his extradition hearing. There is no evidence, for instance, that anyone referred to or consulted the policies in question before making any of the decisions relating to Wieland. The parties also do not dispute that Wieland's hearing date was selected by the state court, not by Desa. DCSF ¶¶ 10–13. HPD policy manuals would thus have played no role in the state court's selection.

The lack of any clear causal connection between the cited policies and Wieland's allege injury means that Wieland has failed to demonstrate a genuine issue of material fact. *Cabasa v. City & Cnty. of Honolulu*, 2015 WL 4545771, at *5 (D. Haw. July 27, 2015), *aff'd sub nom. Cabasa v. City & Cnty. of Honolulu, Dep't of Env't Servs.*, 712 F. App'x 698 (9th Cir. 2018) (granting summary judgment where plaintiff had "not established a genuine issue of material fact as to whether the content of the City's policy was the moving force behind his purported injury" (internal quotation marks omitted)). Accordingly, the Court grants summary judgment as to this claim.

### b.  Practice or Custom

A municipality may be liable under *Monell* if a longstanding, informal practice or custom within the entity was the "moving force" behind the constitutional violation.  436 U.S. at 691; *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021) ("[A] public entity may be held liable for a 'longstanding practice or custom.'").  A plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded."  *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992); *see also Oviatt*, 954 F.2d at 1473–74 ("[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights.").

Wieland claims that there exists a practice or custom in the HPD to "deprive individuals of their liberty" by refusing to "bring an extradition arrestee before a judge 'promptly' or 'with all practicable speed.'"  Dkt. No. 61 at 12–13.  To support his claim, Wieland provides certain records relating to thirty HPD extradition cases in which the arrestee was detained for a period of between four and ten days.  Compl. ¶ 93; Dkt. No. 63-12.

Even if, again, the Court assumed that a constitutional violation occurred as *Monell* requires, *see Lockett*, 977 F.3d at 741, Wieland fails to establish a genuine issue of fact with regard to an unconstitutional custom or practice.  Wieland's claim

relies on the existence of other extradition cases with multi-day detention periods pending a hearing.  But the mere existence of such cases is not enough.

To support a *Monell* claim, a plaintiff must demonstrate "a pattern of similar incidents in order for the factfinder to conclude that the alleged informal policy was so permanent and well settled as to carry the force of law."  *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 671 (9th Cir. 2015), *on reh'g en banc*, 833 F.3d 1060 (9th Cir. 2016) (internal quotation marks omitted).  Here, Wieland identifies the thirty other extradition cases without any context to explain why they serve as good comparators to his circumstances.  Wieland provides no indication, for example, as to why each arrestee was detained for as long as they were—with the reason for each potentially being entirely different than Wieland.  *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").  There may have been identification issues, or there may have been requests to await the arrival of out-of-state counsel. Without such specificity, Wieland's examples fail as comparators for the purpose of establishing a custom or policy.  *See Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1175 (E.D. Cal. 2016) (granting summary judgment because comparator cases

"described at such a level of generality that the Court cannot assess whether they are similar" were "insufficient to support a *Monell* custom/practice claim").

The Court therefore grants summary judgment as to this claim.

### c. Failure to Train

A plaintiff seeking to impose municipal liability for failure to train must show: "(1) [A]n inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training 'actually caused' a deprivation of [a plaintiff's] constitutional rights." *Merritt v. Cty. of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (setting forth a similar three-prong test) (citation omitted); *Wereb v. Maui Cty.*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010). Failure to train claims "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392. The municipality's deliberate indifference may be shown through a "pattern of tortious conduct by inadequately trained employees" or where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Brown*, 520 U.S. at 407–09; *see also Canton*, 489 U.S. at 390 n.10 (entity may be liable if it "so often violate[s] constitutional rights that the need for further training must have been plainly obvious to the city

policymakers, who, nevertheless, are 'deliberately indifferent' to the need"). Liability may only be imposed for failure to train when that failure "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton*, 489 U.S. at 389.

Wieland claims that the City "failed to enact policies, training, or supervision sufficient to ensure officers trained to secure the constitutional rights of . . . persons arrested pursuant to a foreign warrant." Compl. ¶ 94. Once again, the Court could grant summary judgment because no constitutional violation took place. *See Lockett*, 977 F.3d at 741. Wieland's failure-to-train claim fails, however, for additional reasons.

It is not enough for Wieland to simply proclaim that training was inadequate. Rather, a *Monell* plaintiff must point to a "*particular* omission in their training program [that] would cause municipal employees to violate citizens' constitutional rights," or "specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely to occur." *Hyun Ju Park v. City & Cnty. of Honolulu*, 292 F. Supp. 3d 1080, 1099 n.14 (D. Haw. 2018) (internal quotations, alterations, and citations omitted); *see also City of Canton*, 489 U.S. at 396 (a *Monell* failure-to-train claim requires "actual or constructive notice that a *particular* omission in [its] training program cause[d its] employees to violate citizens' constitutional rights" (emphasis added)); *White v. Flathead Cnty.*, 680 F.

Supp. 3d 1211, 1216 (D. Mont. 2023) (granting summary judgment where plaintiff "present[ed] no evidence as to what training or 'tools' [defendant] provides . . . or fails to provide" to prevent constitutional violations).  Wieland has not done so here: he does not explain in what way the City's training was lacking, nor how it might have been improved, much less how improved training would have prevented the constitutional violations he alleges.  Generalized, conclusory claims of failure-to-train, lacking any supporting details, are not enough to create a genuine dispute of material fact.  *See Barror v. City of St. Helens*, 2023 WL 5353346, at *9 (D. Or. June 12, 2023), *report & recommendation adopted as modified*, 2023 WL 5350755 (D. Or. Aug. 18, 2023) (granting summary judgment on *Monell* claim where plaintiff failed to describe proposed training or presented evidence that additional training was "appropriate or available, or would have prevented the type of harm" he alleged).

In light of these shortcomings, the motion for summary judgment is granted as to Wieland's *Monell* failure-to-train claim.

## VII.  <u>Counts 7–9: State Law Claims</u>

Having granted summary judgment on Wieland's federal claims, and because no other basis for original jurisdiction exists, the Court turns to whether to exercise supplemental jurisdiction over Wieland's remaining state-law claims (Counts 7–9). *See* 28 U.S.C. § 1367(c)(3).  Where, as here, all federal claims are dismissed before

trial, the exercise of jurisdiction over any remaining state claim is a matter of the Court's discretion. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right[; i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Although neither retention nor remand nor dismissal is mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000).

Here, the record presents no reason for this Court to exercise supplemental jurisdiction over Wieland's remaining state-law claims. This case remains in its early stages and the Court has yet to invest the substantial time that might move it in favor of retaining the state-law claims. There is no obvious advantage in judicial economy, convenience, or fairness to keep the state-law claims in federal court. In addition, "decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties by procuring for them a sure-footed reading of applicable law." *United Mine Workers*, 383 U.S. at 726. Finally, to the extent relevant, neither party has requested retaining supplemental jurisdiction over the state-law claims. Accordingly, the Court declines to extend supplemental jurisdiction over Counts 7–9, and those claims are, therefore, dismissed without prejudice. *Id*. (stating that, if federal claims are dismissed before trial, "state law claims should be dismissed as well"); *see also Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (explaining that, when declining to exercise supplemental jurisdiction, dismissal should be without prejudice).[11]

## CONCLUSION

For the reasons set forth herein, Defendants' motions for summary judgment, Dkt. Nos. 51 & 52, are GRANTED with respect to Counts 1–6. Wieland's remaining state-law claims, Counts 7–9, are DISMISSED WITHOUT PREJUDICE. The Clerk is instructed to enter Judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: December 9, 2025 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

[11]Because Counts 7–9 are dismissed for lack of supplemental jurisdiction, it is unnecessary to, and the Court declines to, address Defendants' arguments for summary judgment of the same.